UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| CAMILLA KELLY, D.O., | : |
| :--- | :--- |
| Plaintiff, | : |
| v. | : File No. 1:09-CV-70 |
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and UNUM GROUP | : |
| Defendants. | : |

MEMORANDUM AND ORDER
(Papers 36, 37, 56, 64)

I. Introduction

Plaintiff Dr. Camilla Kelly commenced this action against Defendants Provident Life and Accident Insurance Company and Unum Group (collectively Defendants) after her disability benefit payments were discontinued. Kelly alleges she is disabled within the meaning of her policy and seeks unpaid disability benefit payments, among other damages. (Paper 1.) Defendants move for summary judgment on Kelly's breach of contract and tortious bad faith claims. (Paper 36.) Defendants also move to strike Kelly's statement of facts in support of her response to their summary judgment motion (Paper 64), and to stay discovery, or alternatively for a protective order, pending resolution of the summary judgment motion (Paper 37). Kelly moves for summary judgment on her claim for breach of contract. (Paper 56.)

For the reasons set forth below, Defendants' motion for summary judgment and Kelly's motion for partial summary judgment are denied and Defendants' motions to stay discovery and to strike are denied as moot.

II.  Background[1]

Camilla Kelly completed medical school and a residency, and became a Board Certified Internist.  (Paper 55-3 ¶¶ 1, 6.)  On November 30, 1993, during her residency, Dr. Kelly purchased and Defendants issued her a disability insurance policy .  (Paper 36-1 ¶ 1; Paper 55-3 ¶ 2.)  The policy provides Dr. Kelly, as the insured, is entitled to disability benefits if she becomes totally disabled under the definition in the policy.  (Paper 1 ¶ 39 at 7; Paper 36-1 ¶ 2.)  The policy is an "own occupation" policy which means, inter alia, even if a policyholder can work in a related field, benefits will still be owed if the policyholder cannot perform the material and substantial duties of her own occupation.  (Paper 55-3 ¶¶ 2, 4.)  The duties of the policyholder's occupation are those at the time of disability.  Id. ¶ 5.

In 1994, Dr. Kelly began practicing as a general internist in Michigan.  Id. ¶ 6.  She later moved to Vermont and was employed full time as an internist at Central Vermont Hospital.  Id. ¶ 7; Paper 1 ¶ 45.  In May 2003, after three years practicing in Vermont, Dr. Kelly sought the opinion of Dr. Francis Kalibat, a psychiatrist, for psychological problems.

---

[1] Under Local Rule 7.1(c)(3), facts in the parties' statements of undisputed facts (Papers 36-1, 55-3) not controverted in the respective disputes of the statements (Papers 55-2, 64) are deemed admitted.

(Paper 55-3 ¶ 7.) Dr. Kalibat diagnosed her with major depression, anxiety, and social phobia. Id.

Dr. Kelly paid the policy premiums for almost ten years, through May 19, 2003, when she alleges she became disabled. (Paper 1 ¶¶ 46, 52.) On August 4, 2003, she submitted a formal claim to Defendants asserting she stopped working on May 16, 2003 because "mental health issues" inhibited her ability to function as a physician. (Paper 36-1 ¶¶ 4, 6; Paper 55-3 ¶ 8.) The included attending physician statement completed by Dr. Kalibat stated Dr. Kelly suffered from major depression, social phobia, and anxiety disorder, and she could not function as a physician. (Paper 36-1 ¶¶ 5, 7.)

Defendants accepted the claim and made monthly benefit payments to Dr. Kelly beginning in September 2003.[2] (Paper 1 ¶ 48 at 8; Paper 36-1 ¶ 9.) Drs. Kelly and Kalibat periodically submitted claim statements representing Dr. Kelly remained unable to practice her occupation as an internist. (Paper 36-1 ¶¶ 13-14, 19.)

In the spring of 2007, Defendants learned Dr. Kelly had left Vermont to care for her terminally ill sister in California and was no longer seeing Dr. Kalibat regularly. See id. at ¶ 20. In July, Defendants arranged -- with Dr. Kalibat's support -- for additional psychological testing of Dr. Kelly by Dr. Stephen Mann, a psychologist, and Dr. Albert Drukteinis, a psychiatrist. Id. at ¶¶ 21-22; Papers 36-15, 36-16. In August, Defendants' medical consultant in psychiatry, Dr. John Szlyk, reviewed Dr. Mann's and Dr. Drukteinis'

---

[2] Plaintiff asserts the claim was initially paid under a reservation of rights, but the reservation was rescinded after completion of Defendants' investigation. (Paper 55 at 5.)

3

reports and concluded Dr. Kelly had clinically improved and could "return to work in the practice of medicine (with the possible exception of work in a critical care setting)." (Paper 36-1 ¶¶ 21, 28.) Defendants also had a vocational analysis of Dr. Kelly's pre-disability work performed which was completed August 16, 2007. (Paper 36-18.)

On August 23, 2007, Debra Eichel, Lead Disability Benefit Specialist, informed Dr. Kelly in writing Defendants were discontinuing further benefits under the policy. (Paper 36-19.) Drs. Kelly and Kalibat responded to the invitation to submit additional information, but by a December 18, 2007 letter, Defendants affirmed the decision to terminate benefits because Dr. Kelly was no longer totally disabled under the terms of the policy. Id.; Papers 36-20, 36-26. Plaintiff commenced this suit on March 18, 2009. (Paper 1.)

Defendants assert they received through discovery Dr. Kelly's medical license renewal applications. (Paper 36-1 at 17.) On August 30, 2004, Dr. Kelly circled "yes" in response to the question "[h]ave you acquired a physical or mental condition or disorder which in any way impairs or limits your ability to practice with reasonable skill and safety[]". (Paper 36-11.) On September 1, 2006, Dr. Kelly circled "no" in response to the same question. Id. On both forms, the question was introduced by the statement: "Since you were originally licensed or since you completed your last renewal application." Id. Dr. Kalibat also sent letters to the licensing board in 2005 in connection with Dr. Kelly's attempt to have her license reinstated. (Paper 36-10.) In one of these letters, he stated Dr. Kelly had "recovered from the condition for which she was treated" and that her

4

"condition does not impair or limit her ability to practice with reasonable skill and safety." Id. at 3.

III.     Summary Judgment Standard

Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must resolve ambiguities and draw inferences in favor of the non-moving party. Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (citation omitted). "Where both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Murray v. Int'l Bus. Machs. Corp., 557 F. Supp. 2d 444, 448 (D. Vt. 2008) (citing Schwabenbauer v. Bd. of Educ. of Orleans, 667 F.2d 305, 314 (2d Cir. 1981)).

The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation marks and citation omitted). Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. See, e.g., Fed. R. Civ. P. 56(e) 1963 Advisory Committee Note; Anderson, 477 U.S. at 255.

IV.  Discussion

   A.  Breach of Contract Claim

Both Defendants and Kelly have moved for summary judgment on Kelly's breach of contract claim. Kelly must establish breach of contract by a preponderance of the evidence. Lewis v. Cohen, 603 A.2d 352, 355 (Vt. 1991). Under Vermont law, insurance contracts are strictly construed against the insurer. See Lunge v. Nat'l Cas. Co., 977 F. Supp 672, 676 (D. Vt. 1997). Generally, whether an insured is disabled is a question of fact for the jury. Anair v. Mutual Life Ins. Co. of N.Y., 42 A.2d 423, 430 (Vt. 1945) (lawyer's claim of disability resulting from a nervous condition one of fact for the jury). The definition of total disability in the policy is "due to [i]njuries or [s]ickness: (1) you are not able to perform the substantial and material duties of your occupation; and (2) you are receiving care by a Physician which is appropriate for the condition causing the disability." (Paper 36-3 at 8.) "Occupation" is further defined as "the occupation . . . in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation." Id.

Courts interpret contracts to give effect to the parties' intent, which is presumed to be reflected in the contract's language when that language is clear. State v. Philip Morris USA, Inc., 945 A.2d 887, 892 (Vt. 2008) (citation omitted). If an ambiguity exists in a contract, the question of what the parties intended becomes a question of fact for the factfinder to resolve. Dep't of Corr. v. Matrix Health Sys., P.C., 950 A.2d 1201, 1205 (Vt. 2008) (citation omitted).

Defendants argue summary judgment should be granted in their favor because Dr. Kelly is no longer disabled and consequently not entitled to benefits under her policy. They focus solely on statements Drs. Kelly and Kalibat made in connection with her attempt to renew her medical license that she could practice medicine with reasonable skill and safety.[3] See Papers 36-11 at 5; 36-10 at 3. Dr. Kalibat also stated Kelly had "recovered from the condition for which she was treated." (Paper 36-10 at 3.)

Kelly argues summary judgment should be granted in her favor because Defendants terminated her benefits when she was disabled under the terms of the policy and therefore is entitled to benefits. (Paper 55 at 9-10.) Kelly makes four arguments in support of her motion. Defendants were aware of her licensing renewal efforts -- and the accompanying statements -- but failed to assert them as a reason for the benefit denial and therefore waived the argument. Defendants know a doctor may be able to practice in another area of medicine but remain disabled under an own occupation policy. Defendants knew Kelly was renewing her license to go into a different area of medicine, not to return to practicing as an internist. And finally, neither she nor Dr. Kalibat asserted she could practice as an internist. Id. at 11-15.

Defendants urge the Court to resolve a credibility issue. They contend the disability claim rests entirely on the credibility of Drs. Kelly and Kalibat. As a result of their contradictory statements, Defendants argue no reasonable jury could find credible

---

[3] Defendants point to independent medical examinations and a vocational investigation to argue they are entitled to summary judgment on Kelly's bad faith claim (Paper 36 at 13-14) but do not reference them in their breach of contract section (Paper 36 at 7-10).

7

their testimony that Dr. Kelly is currently disabled. (Paper 36 at 9.) The Court is not persuaded by this argument. First, statements made before the commencement of litigation are not judicial admissions -- i.e., admissions that act as concessions and remove a fact from contention -- but are only evidentiary admissions -- i.e., admissions that should be submitted to the jury for consideration. See Weiss v. Union Cent. Life Ins. Co., 28 F. App'x 87, 89 (2d Cir. 2002).

Second, Defendants' citation to Bullock v. Life Ins. Co. of Miss., 872 So.2d 658 (Miss. 2004), for the proposition that a trial court may properly "determine[] credibility in granting summary judgment where, as here, the insured's statements 'so obviously contradict each other, that one can only conclude that false statements were made,'" (Paper 36 at 10 (quoting Bullock, 872 So. 2d ¶ 11), is unavailing. Defendants fail to note the Bullock case involved material misrepresentation as a basis for rescinding the insurance contract and therefore the fact that contradictory statements were made was sufficient. Here, the statements are evidentiary admissions to be weighed by the jury in determining both credibility and the ultimate issue of whether Dr. Kelly is disabled under the policy and entitled to benefits.

For her part, Dr. Kelly also relies heavily on "admissions." See Paper 55 at 10 ("Ms. Eichel's admissions by themselves are sufficient to establish a breach of contract.") As are the statements of Drs. Kelly and Kalibat, Ms. Eichel's statements in her deposition are nothing more than evidentiary admissions to be weighed by the jury. Weiss, 28 F. App'x at 89 (noting "deposition statements are generally treated as evidentiary admissions").

8

Kelly's policy was an own occupation policy and her occupation was an internist. As she notes, her certification to the licensing board did not specify what medical occupation she was capable of performing, but only that she was capable of practicing medicine with reasonable skill and safety. She argues the emphasis Defendants place on the seemingly discordant statements made by Dr. Kalibat are explained by the definition of disability under which he was laboring: specifically, whether Dr. Kelly could perform the substantial and material duties of her internist position prior to her disability. As she points out, her difficulties lay, <u>inter alia</u>, in making hospital rounds and conferring with other doctors, both, she asserts, substantial and material duties of her occupation.

The Court finds material questions of fact remain precluding summary judgment in either party's favor. Construing the facts in the light most favorable to and drawing all reasonable inferences in favor of Defendants, the Court finds there is a genuine dispute regarding Dr. Kelly's entitlement to disability benefits. Likewise, construing the facts in the light most favorable to and drawing all reasonable inferences in favor of Dr. Kelly, a genuine dispute remains. The parties dispute the substantial and material duties of Dr. Kelly's occupation prior to her disability and whether she is disabled within the meaning of the policy. These are questions for a jury to resolve.

    B.    <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

Although the parties have not addressed Kelly's claim for breach of the implied covenant of good faith and fair dealing in their filings, the Court proceeds sua sponte to examine the pleadings to determine whether relief can be granted. A trial court may properly enter judgment on the pleadings sua sponte if a party clearly is "assured of

9

victory as a matter of law and there is no material factual dispute." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 & n.25 (3d ed. 2004). Under Vermont law, the parties to an insurance contract owe each other mutual duties of good faith and fair dealing. Peerless Ins. Co. v. Frederick, 869 A.2d 112 (Vt. 2004). Vermont law, however, does not recognize a separate cause of action for violation of the covenant of good faith and fair dealing where a plaintiff also pleads a breach of contract claim based on the same conduct. See Monahan v. GMAC Mortgage Corp., 893 A.2d 298, 316 n.5 (Vt. 2005). As the conduct allegedly violating the implied covenant is also the predicate for Kelly's breach of contract claim, compare Paper 1 ¶¶ 51-60 with ¶¶ 61-66, her implied covenant claim, as pled, fails under Vermont law. Accordingly, Kelly's breach of the implied covenant of good faith and fair dealing claim is dismissed.

C. Tortious Bad Faith

Defendants have also moved for summary judgment on Kelly's tortious bad faith claim (Paper 1 ¶¶ 74-103 at 11-15). (Paper 36 at 10-16.) Kelly claims Defendants discontinued further benefits under her policy in bad faith because they had no reasonable basis to deny her benefits and they knew or recklessly disregarded the fact that no reasonable basis existed for the discontinuation. (Paper 1 ¶ 75 at 11.)

In Bushey v. Allstate Ins. Co., the Vermont Supreme Court recognized a cause of action for bad-faith failure of an insurer to pay a claim of its insured. To establish such a claim, a plaintiff must show: (1) the insurance company had no reasonable basis to deny benefits of the policy, and (2) the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim. 670 A.2d 807, 809 (Vt. 1995). An insurance

10

company, however, "may challenge claims that are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." Id. (internal quotation marks and citation omitted). Because insurers may challenge claims that are fairly debatable, if a realistic question of liability exists, an insurer may withhold payment while determining whether there is a reasonable basis for the claim. Id. at 810.

Under the Vermont rule, "no insurer will be liable for a good-faith error in denying or delaying a claim, and consumers [] have a remedy whenever a company's conduct evinces a conscious disregard for its duty under the policy or such recklessness in evaluating the facts and circumstances of a claim that it never gives the claim due and fair consideration." Id. Accordingly, recovery is possible only if an insurer both errs in denying coverage and does so unreasonably. Id.

Kelly claims there are genuine issues of fact disputed by the parties that preclude granting summary judgment to the Defendants. Defendants argue the termination of benefits was reasonable. Specifically, they had two medical examinations and a vocational analysis performed after they became suspicious of her claim because she traveled alone to California "to spend an extended period of time helping care for her hospitalized sister." (Paper 36 at 13.) As Kelly points out, Defendants should explain to a jury how a trip to California to care for a terminally ill sibling bears on Kelly's ability to practice medicine as an internist. (Paper 55 at 21.) Defendants did investigate the claim prior to termination, however, the parties dispute the conclusiveness of the evidence upon which they based their decision.

11

Kelly points to Ms. Eichel's deposition testimony that Dr. Kelly could not perform hospital rounds or confer with other doctors and to Dr. Drukteinis' report in which he stated Dr. Kelly might have difficulty functioning in a critical care environment.  (Paper 55 at 16-18.)  Dr. Drukteinis concluded Kelly's "current functioning does not necessarily reflect an ability to function symptom free in any physician capacity."  (Paper 36-16 ¶ 8 at 9.)  Kelly argues her benefits were improperly terminated in light of these admissions because these responsibilities were material and substantial duties of her occupation.  Again, these are evidentiary admissions bearing on issues of material fact regarding whether Defendants acted reasonably in terminating Kelly's benefits and should be weighed by the jury.  In light of the analysis regarding Kelly's breach of contract claim, clearly issues of fact regarding Kelly's entitlement to coverage remain.  Construing the facts in the light most favorable to and drawing all reasonable inferences in favor of Kelly as the non-moving party, the Court cannot determine whether the discontinuation of benefits had a reasonable basis.

V.  Motion to Stay Discovery

Defendants' Motion to Stay Discovery (Paper 37) is denied as moot in light of the Court's ruling on the parties cross motions for summary judgment.  The Amended Stipulated Discovery Schedule (Paper 31) remains in effect.  If the parties wish to extend any deadlines, they should consult and file for the Court's approval a revised discovery schedule to include a second mediation session with Attorney Marks.

Defendants have also moved for a protective order to prevent the deposition of Maureen Griffin and to narrow the scope of the Rule 30(b)(6) deposition notice.  (Paper

37.) Defendants argue Griffin, Regional Vice President of Claims, with partial responsibility for Defendant's Worcester, Massachusetts claim operation, should not be deposed because she is a high-level executive and had no involvement in the decision to deny Dr. Kelly's claim. Id. at 10-11.

The motion for a protective order with regard to the deposition of Ms. Griffin is denied. Dr. Kelly points out Ms. Eichel's two other superiors are no longer at the company and information on how claims such as Dr. Kelly's are handled by the Worcester office could be relevant since the tortious bad faith claim survives summary judgment. Dr. Kelly's argument that a vice president position is hardly the "apex" of a company is also persuasive.

In view of the Court's ruling on the summary judgment motions, the parties shall confer in good faith on the scope and specifics of the Rule 30(b)(6) notice in an attempt to narrow the issues to be inquired into and limit the number of witnesses to be examined.

VI.  Motion to Strike

Defendants move to strike Plaintiff's statement of facts in support of her opposition to the motion for summary judgment. The motion is denied as moot since the Court did not rely on it in reaching its decision on the motions for summary judgment. The facts considered in the analysis were drawn from the Complaint and the parties' statements of undisputed facts (Papers 36-1; 55-3) as deemed admitted after comparison to the parties' respective disputes of those statements (Papers 55-2; 64). See L.R. 7.1(c)(3).

VII.  Conclusion

The Court denies Defendants' Motion for Summary Judgment (Paper 36) and Kelly's Motion for Partial Summary Judgment (Paper 56).  The Court denies as moot Defendants' Motion to Stay Discovery (Paper 37) and Defendants' Motion to Strike (Paper 64.)  The Court dismisses sua sponte Kelly's claim for breach of the implied covenant of good faith and fair dealing.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 9th day of March, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge